IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DELORIS DEAN, ) | |
| ) | No. 16 CV 9269 |
| Claimant, ) | |
| ) | |
| v. ) | |
| ) | Magistrate Judge Michael T. Mason |
| NANCY A. BERRYHILL, Acting ) | |
| Commissioner of the U.S. Social ) | |
| Security Administration, ) | |
| ) | |
| Defendant. ) | |
| ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Deloris Dean ("Claimant") filed a motion for summary judgment seeking reversal of the final decision of the Commissioner of Social Security ("Commissioner"), denying her claim for disability benefits. The Commissioner has filed a cross-motion asking the Court to uphold the decision of the Administrative Law Judge ("ALJ"). For the reasons set forth below, Claimant's motion for summary judgment (Dkt. 17) is granted and the Commissioner's motion for summary judgment (Dkt. 21) is denied.

**I. Background**

    **A. Procedural History**

Claimant filed her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") on November 5, 2012 due to two strokes, obstructive sleep apnea, diabetes and hypertension. (R. 231.) Claimant's applications were denied initially and on reconsideration. (R. 134, 145.) Claimant requested a hearing before an ALJ, which was held on December 17, 2014. (R. 35-83.) On April 13, 2015, the ALJ issued a written decision finding that Claimant was not disabled. (R.

1

17-34.)  On July 26, 2016, Claimant's request for review by the Appeals Council was denied, making the ALJ's decision the final decision of the Commissioner.  (R. 1-6.)  This action followed.

### B. Relevant Medical Evidence

#### 1. Treating Physicians

Evidence before the ALJ dates back to October of 2012.  (R. 384.)  Claimant claims she suffered a stroke in 2012.  (R. 54.)  A discharge report from St. James Hospital shows that she was admitted with complaints of right arm and facial weakness and numbness, and she was diagnosed with a transient ischemic attack with a rule out of cerebrovascular accident.  (R. 392.)  She was also diagnosed with diabetes mellitus, dyslipidemia, a urinary tract infection, an anxiety disorder, and substance abuse.  (*Id.*)

There are no treatment notes, doctor visits, or hospital visits in the record between October of 2012 and November of 2013 that relate to Claimant's ambulatory limitations.  Claimant underwent a physical therapy assessment with Dr. John Williams, PT, in November of 2013.  Claimant was recommended skilled physical therapy to address deficits in balance, gait, and endurance during this assessment.  (R. 541.)  She presented to the assessment with pain, and she demonstrated reduced balance, gait deficits, significant muscle weakness, decreased range of motion and flexibility, and reduced endurance.  (*Id.*)  Dr. Williams gave Claimant a short term goal of an ability to ambulate 300 feet with a rolling walker and noted that Claimant had a mild/moderate left antalgic gait pattern while using her walker, and that without her assistive device, she had an increased hip sway while ambulating.  (R. 543.)  Physical therapy reports from January of 2014 show that Claimant was using her cane.  (R. 843.)

### 2. Agency Physicians

In March of 2013, Claimant underwent a consultative examination for the Bureau of Disability Determination Services with Dr. Albert Osei. (R. 488.) During that exam, the adjudicator noted that Claimant had mild difficulties getting on and off the exam table and mild difficulties getting up from the sitting position. (R. 491.) Dr. Osei also noted that Claimant could walk greater than 50 feet both with using a walker and without the walker; however, without the walker, she had mild dragging of her left foot and less swinging of her left arm. (R. 429.) She was able to perform toe, heel and tandem walk with marked unsteadiness and could squat with holding, but she was unable to hop on either leg. (*Id.*) This information was reviewed by physician Vidya Madala, M.D., also in March of 2013. Dr. Madala noted that Claimant walked with a walker, but that she was capable of walking with mild difficulties without any assistive device. (R. 91.) Dr. Madala asserted that Claimant was unable to walk for long without pain and needed the use of a walker or a cane. (R. 92.)

In November of 2013, Claimant attended an internal medicine consultative examination for the Bureau of Disability Determination Services with Dr. Charles Carlton. (R. 516.) At this exam, Claimant stated she suffered another stroke in August of 2013. (R. 517.) There are no records from the hospital from the time period in which the stroke allegedly occurred. While at the hospital, Claimant reports to have received physical therapy, but that she was experiencing balance problems and was given a prescription for additional physical therapy on an outpatient basis. (*Id.*) Claimant also claims that she was prescribed a walker during her hospitalization for the stroke in August of 2013 to help with balance. (*Id.*) Dr. Carlton once again noted that Claimant

was able to walk greater than 50 feet without an assistive device, but that she displayed some unsteadiness on her feet while attempting to toe walk, heel walk, squat, and tandem walk. (R. 518.) He also noted a mild degree of difficulty in performance without the use of an assistive device. (R. 521.) The reviewing physician on consideration, Dr. Julio Pardo, M.D., opined in January of 2014 that Claimant needs a walker or cane, noting mild difficulties in walking when not using any assistive device. (R. 112.)

### C. Claimant's Testimony

Claimant appeared at the hearing represented by her attorney and offered the following testimony. At the time of the hearing, Claimant was 54 years old and living with her sister, mother, and father. (R. 53, 63.) Claimant began using a walker after her stroke in 2012. (R. 71.) After her stroke in 2013, she again was using a walker and a cane. (R. 46.) She started using the cane while in physical therapy, and she was told at the hospital to use the cane to avoid falls. (R. 71.) She stated that she uses the cane because she has trouble with balance and is a fall risk, so the cane helps her to get around. (R. 51.) Claimant also indicated that she has fallen down the stairs due to her struggle with balance. (R. 58.) She stated that she cannot walk long distances, so she uses a scooter cart when she goes to the store. (R. 67.) She also claimed she can only walk for ten minutes before she needs a break, and that she can stand twenty to twenty-five minutes before she needs to sit down. (*Id.*)

### D. Vocational Expert Testimony

Vocational Expert ("VE") Lee Knutson also appeared at the hearing. The VE first classified Claimant's past work under the Dictionary of Occupational Titles ("DOT") as a CNA (medium/semiskilled, or heavy as performed) and a companion (light/semi-skilled).

(R. 79.) Next, the ALJ asked the VE if an individual was limited to light work and to occasional climbing ladders, ropes or scaffold; frequent climbing ramps or stairs; frequent balancing, stooping, crouching, kneeling, and crawling, they could perform Claimant's past work. (R. 79-81.) The VE testified that such an individual could perform her past work as a companion, as well as an assembler, maid, or housekeeper. (*Id.*) Using the same hypothetical, but changing to occasional climbing ramps or stairs, occasional balancing, stooping, crouching, kneeling, and crawling, the VE stated Claimant would still be able to perform her past work as a companion as well as an assembler, maid, or housekeeper. (*Id.*) Changing the hypothetical to no kneeling, crawling, climbing of ladders, ropes or scaffold; occasional climbing of ramps or stairs; no reaching with the left non-dominant upper extremity; occasional handling and fingering with the left non-dominant upper extremity; limited to jobs which can be performed while using a handheld assistive device at all times when standing, and the contralateral upper extremity cannot be used to carry objects, the VE testified that such an individual would not be able to perform any of the past work. (*Id.*) He stated that the use of a cane would limit her to sedentary work, and the inability to use the left hand for reaching would eliminate all work entirely in the workforce. (*Id.*)

## II. Analysis

### A. Standard of Review

This Court will affirm the ALJ's decision if it is supported by substantial evidence and free from legal error. 42 U.S.C. § 405(g); *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002). Substantial evidence is more than a scintilla of evidence; it is "such relevant evidence as a reasonable mind might accept as adequate to support a

5

conclusion." *Diaz v. Chater*, 55 F.3d 300, 305 (7th Cir. 1995) (quoting *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971)). We must consider the entire administrative record, but will not "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute our own judgment for that of the Commissioner." *Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003) (citing *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000)). This Court will "conduct a critical review of the evidence" and we will remand if the Commissioner's decision "lacks evidentiary support or an adequate discussion of the issues." *Lopez*, 336 F.3d at 539 (quoting *Steele*, 290 F.3d at 940).

In addition, while the ALJ "is not required to address every piece of evidence," he "must build an accurate and logical bridge from evidence to his conclusion." *Clifford*, 227 F.3d at 872. The ALJ must "sufficiently articulate [his] assessment of the evidence to assure us that the ALJ considered the important evidence ... [and to enable] us to trace the path of the ALJ's reasoning." *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993) (per curiam) (quoting *Stephens v. Heckler*, 766 F.2d 284, 287 (7th Cir. 1985)).

**B. Analysis under the Social Security Act**

In order to qualify for SSI or DIB, a claimant must be "disabled" under the Social Security Act (the "Act"). A person is disabled under the Act if "he or she has an inability to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). In determining whether a claimant is disabled, the ALJ must consider the following five-step inquiry: "(1) whether the claimant is currently employed, (2) whether the claimant has a severe impairment, (3) whether the claimant's impairment is one that the Commissioner considers

conclusively disabling, (4) if the claimant does not have a conclusively disabling impairment, whether he can perform past relevant work, and (5) whether the claimant is capable of performing any work in the national economy." *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). The claimant has the burden of establishing disability at steps one through four. *Zurawski v. Halter*, 245 F.3d 881, 885-86 (7th Cir. 2001). If the claimant reaches step five, the burden then shifts to the Commissioner to show that "the claimant is capable of performing work in the national economy." *Id.* at 886.

Here, the ALJ applied the five-step process in denying Claimant's application for benefits. At step one, the ALJ determined that Claimant had not engaged in substantial gainful activity since her alleged onset date of October 1, 2013. (R. 22.) At step two, the ALJ determined that Claimant had the following severe impairments: cerebrovascular accident, hypertension, and obesity. (*Id.*) The ALJ found that Claimant's obstructive sleep apnea, asthma, and diabetes mellitus were non-severe impairments. (R. 23.) At step three, the ALJ concluded that Claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the Commissioner's listed impairments. (R. 23.)

The ALJ went on to assess Claimant's RFC, finding Claimant had the residual functional capacity to perform light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b), except occasional balancing, stooping, kneeling, crouching, crawling, and climbing of ladders, ropes, scaffolds, ramps and stairs. (R. 24.) Based on this RFC, at step four, the ALJ found that Claimant is capable of performing past relevant work as a companion. (R. 27-28). As a result, the ALJ entered a finding of not disabled. (*Id.*)

Claimant now argues that the ALJ's decision is not supported by substantial evidence and requires remand. The only issue in this appeal is whether the ALJ improperly evaluated Claimant's need for an assistive device. We address Claimant's argument below and find that the ALJ's opinion should be remanded.

**C. The ALJ Failed to Build An Accurate And Logical Bridge From The Evidence To Her Conclusion That Claimant Does Not Need an Assistive Device.**

Claimant contends that the ALJ failed to include at least some use of an assistive device in the RFC. (R. 51, 67.) She argues that although the cane was never prescribed by a doctor, there was sufficient evidence in the record that the ALJ should have considered the use of a cane or walker in making his determination. In response, the Commissioner argues that "to find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed." SSR 96-8p, 1196 SSR LEXIS 5. The Commissioner asserts that nothing in the record establishes that a cane was medically necessary.

In making a disability determination, an ALJ's RFC assessment must include an evaluation of medically determinable impairments. *See Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009). This evaluation must be captured in a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations). SSR 96-8p, 1996 SSR LEXIS 5; *see also Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005). "Although the ALJ need not discuss every piece of evidence in the record, he must confront the evidence that does not support his conclusion and explain why it was rejected." *Thomas v. Colvin,* 534 Fed. Appx 546, 550 (7th Cir. 2013).

8

Here, we find that the record includes sufficient evidence regarding Claimant's need for an assistive device, which the ALJ should not have disregarded. For example, Claimant noted in her functional report that she uses a cane or walker. (R. 292.) Claimant was using her cane during the hearing and testified as to her need for it. (R. 45-46, 57-58, 67.) She also stated that she was prescribed a walker for balance during her hospital stay after her most recent stroke in August of 2013. (R. 517.) Although there are no medical records to corroborate her claim that her walker was prescribed at the hospital, physical therapy reports from November of 2013 indicate that she was still using a walker, and the physical therapist incorporated her walker into the short-term goals. (R. 541.) The physical therapy reports also note that Claimant was still using a cane in January of 2014. (R. 843.) Claimant testified as to balance issues, which she asserts are the reason she needs a cane. (R. 51.) Further, Claimant asserts that a nurse at the hospital instructed her to use her cane because of her instability. (R. 71.)

Moreover, the state physicians that the ALJ relied on to determine Claimant's RFC also noted that Claimant has a mild need for an assistive device. (R. 92, 112, 521.) The Commissioner argues that the ALJ properly noted that all the state physicians opined that Plaintiff could walk for more than 50 feet without an assistive device. However, the ALJ failed to properly evaluate the rest of the state physicians' medical opinions, in which they noted mild difficulties in walking without an assistive device and increased dragging of the left foot and decreased left arm swinging without an assistive device. (R. 91, 112, 429, 518.) They also noted that Claimant cannot walk for long without pain and needs an assistive device. (R. 92, 112, 521.) Dr. Charles Carlton noted a mild degree of difficulty in performance without need/use of assistive

9

device. (R. 521.) Despite this evidence, the ALJ excluded the use of an assistive device from his RFC.

We find that this was an error that requires remand. In *Parker v. Astrue,* the Seventh Circuit addressed an ALJ's decision to disregard a claimant's purported need for a cane. 597 F.3d 920, 922 (7th Cir. 2010). The Court noted that "although the ALJ thought it suspicious that plaintiff use[d] a cane when no physician had prescribed a cane;" the Court held that "a cane does not require a prescription [because] it had been suggested to plaintiff by an occupational therapist." *Parker,* 597 F.3d at 922. Here, while it is true that there is no prescription in the record, there are several references (in addition to her testimony) in the record regarding Claimant's need for a case. The ALJ should have more thoroughly examined this evidence and articulated logical reasons for disregarding this evidence in making his RFC findings. *Thomas*, 534 Fed. Appx. at 550 (remanding where the ALJ did not build the requisite logical bridge between the evidence in the record that claimant needed a cane and the RFC that did not account for a cane). In addition, although the Commissioner cites to medical evidence in the record that Claimant can walk 50 feet without use of an assistive device, this is not the same as the ability to sustain full time employment. *See, e.g, Thomas,* 534 Fed. Appx. at 551 ("walking for 50 feet without a cane – 'a brief excursion' – does not demonstrate an ability to stand for 6 hours."); *Scott v. Astrue*, 647 F.3d 734, 740 (7th Cir. 2011) ("brief excursion hardly demonstrates an ability to stand for 6 hours").

And finally, we agree with Claimant that the ALJ should have included this limitation in her hypothetical to the VE. *Steele v. Barnhart*, 290 F.3d 936, 942 (7th Cir. 2002) ("hypothetical questions posed to the vocational expert ordinarily must include all

limitations supported by the medical evidence in the record).  The VE opined that the need for a cane *at all times* would limit her to sedentary work, which the ALJ disregarded.  The Commissioner argues that the ALJ did not error here because Claimant has not demonstrated that her past work entailed more than 50 feet of walking at a time, or that she would be unable to do this work without the need for an assistive device under limited circumstances.  However, we note again that the ALJ cannot disregard evidence in the record that is contrary to his determination.   The record was clear that Claimant needs a cane to perform some activities.  The ALJ should have included this factor into his hypotheticals to the VE.

For these reasons, we find that remand is required in this case. On remand, the ALJ is to consider Claimant's testimony and the other evidence in the record about her reliance on a cane.  If the ALJ again determines that Claimant is not disabled, he or she should adequately articulate their reasons for disregarding the evidence regarding Claimant's reliance on an assistive device.

### III. Conclusion

For the foregoing reasons, Claimant's motion for summary judgment is granted, and the Commissioner's motion for summary judgment is denied.  It is so ordered.

**DATED: July 27, 2018**

_____
**The Honorable Michael T. Mason
United States Magistrate Judge**

11